**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

SPANISH BROADCASTING SYSTEM, INC.,

      Plaintiff,

   v.

LUIS JIMENEZ, ALMA JIMENEZ a/k/a MARIA
ALMA, LUIS JIMENEZ ENTERPRISES, LLC,
JUAN ESTEBAN RODRIGUEZ, and ALMA
ENTERTAINMENT, LLC,

      Defendants.

No.  07-cv-651 (VM) (FM)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS**

KAYE SCHOLER LLP

Paul C. Llewellyn (PL 8634)
Mark A. Beckman (MB 6750)

425 Park Avenue
New York, NY 10022-3598
Tel:   (212) 836-8000
Fax:   (212) 836-8689

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND AND ALLEGATIONS................................................................... 4

    Jimenez's Allegations Regarding *El Vacilón* Characters and Skits.................... 4

    Luis Jimenez's Employment Agreement With SBS ........................................ 5

    Jimenez's Claims for Tortious Interference and Payments Owed...................... 6

    The State Court Action and Jimenez's Declaratory Judgment Counterclaim .......... 7

ARGUMENT ....................................................................................................... 8

I.    COUNTS I, II, III AND IV ARE FORECLOSED BY THE EMPLOYMENT
    AGREEMENT BETWEEN JIMENEZ AND SBS ............................................ 8

    A.    Jimenez's Claim of Rights in the *El Vacilón* Characters, Skits and Names
        Is Foreclosed by the Employment Agreement. ...................................... 9

    B.    Jimenez Consented in the Employment Agreement to SBS's Use of the *El
        Vacilón* Characters, Skits and Names and His Name, Likeness and Voice.......... 10

    C.    SBS's Ownership of Copyright in the *El Vacilón* Show and Confirmed
        Right to Prepare Derivative Works of the *El Vacilón* Show Foreclose Any
        Unfair Competition and Trademark Claims by Jimenez. ....................... 11

II.    JIMENEZ FAILS TO STATE CLAIMS FOR TRADEMARK INFRINGEMENT
    AND UNFAIR COMPETITION UNDER FEDERAL AND STATE LAW.................. 12

    A.    The "Characters" and "Skits" Asserted by Jimenez Are Not Protectable
        Under Unfair Competition and Trademark Infringement Law. ..................... 13

    B.    Counts I, II and III Fail to Allege Any Trademark Use of the Claimed
        Matter. ......................................................................................... 15

    C.    Counts I, II and III Fail to Allege That Any Matter in Which Jimenez
        Claims Rights Is Source-Identifying.................................................... 16

    D.    Counts II and III Are Subsumed Within the Right of Publicity Law. ........... 18

III.    COUNTS V AND VI FAIL TO STATE TORTIOUS INTERFERENCE CLAIMS....... 18

IV.    THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER
    JIMENEZ'S CLAIM FOR DECLARATORY RELIEF IN COUNT IX .................. 20

Page

V.     COUNTS VII, VIII AND IX ARE NOT PART OF THE SAME CASE OR
       CONTROVERSY AS THE REMAINDER OF THE ACTION ...................................... 23

CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

Page(s)

*815 Tonawanda St. Corp. v. Fay's Drug Co.,*
    842 F.2d 643 (2d Cir. 1988) ..................................................................................17

*Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,*
    42 N.Y.2d 538 (1977)...........................................................................................13

*Apotex v. Sanofi-Synthelabo, Inc.,*
    386 F. Supp. 2d 549 (S.D.N.Y. 2005) ..................................................................21

*Arnold v. ABC, Inc.,*
    2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) .........................................................16

*Avon Prods., Inc. v. S.C. Johnson & Son, Inc.,*
    984 F. Supp. 768 (S.D.N.Y. 1997) .......................................................................13

*Awosting Reserve LLC v. Chaffin Light Assoc. Co.,*
    296 F. Supp. 2d 470 (S.D.N.Y. 2003) .............................................................21, 22

*Booth v. Colgate-Palmolive Co.,*
    362 F. Supp. 343 (S.D.N.Y. 1973) ...........................................................11, 17, 18

*Bray v. City of New York,*
    356 F. Supp. 2d 277 (S.D.N.Y. 2004) ..................................................................24

*Bridgeport Music, Inc. v. Universal Music Group, Inc.,*
    440 F. Supp. 2d 342 (S.D.N.Y. 2006) ....................................................................5

*Brillhart v. Excess Ins. Co.,,*
    316 U.S. 491 (1942)..............................................................................................21

*Burgess v. Omar,*
    345 F. Supp. 2d 369 (S.D.N.Y. 2004) ..................................................................24

*CGI Solutions, LLC v. Sailtime Licensing Group, LLC,*
    2005 WL 3097533 (S.D.N.Y. Nov. 17, 2005).......................................................23

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ...................................................................................5

*Clairol, Inc. v. Gillette Co.,*
    389 F.2d 264 (2d Cir. 1968) .................................................................................15

Page(s)

*Cory v. Nintendo of Am., Inc.,*
   592 N.Y.S.2d 6 (N.Y. App. Div. 1993) .............................................................10

*D.C. Comics, Inc. v. Filmation Assocs.,*
   486 F. Supp. 1273 (S.D.N.Y. 1980) ..............................................................13

*D.C. Comics v. Kryptonite Corp.,*
   336 F. Supp. 2d 324 (S.D.N.Y. 2004) ...........................................................13

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,*
   228 F.3d 56 (2d Cir. 2000) ............................................................................14

*Empresa Cubana Del Tabaco v. Culbro Corp.,*
   399 F.3d 462 (2d Cir. 2005) ..........................................................................12

*First Nationwide Bank v. Gelt Funding Corp.,*
   27 F.3d 763 (2d Cir. 1994) ............................................................................17

*Fleischer v. W. P. I. X., Inc.,*
   213 N.Y.S.2d 632 (N.Y. Sup. Ct. 1961) .......................................................10

*Great Am. Ins. Co. v. A.G. Ship Maint. Corp.,*
   368 F. Supp. 2d 364 (S.D.N.Y. 2005) ...........................................................21

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.,*
   735 F. Supp. 581 (S.D.N.Y. 1990) ................................................................23

*Grodin v. Liberty Cable,*
   664 N.Y.S.2d 276 (N.Y. App. Div. 1997) .....................................................18

*Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms.,*
   298 F.3d 136 (2d Cir. 2002) .......................................................................5, 8

*Hormel Foods Corp. v. Jim Henson Prods.,*
   73 F.3d 497 (2d Cir. 1996) ............................................................................15

*In re Am. Express Co. S'holder Litig.,*
   39 F.3d 395 (2d Cir. 1994) ........................................................................8, 17

*Jabbour v. Albany Med. Ctr.,*
   237 A.D.2d 787 (N.Y. App. Div. 1997) ........................................................19

*Kaufman & Fisher Wish Co. v. F.A.O. Schwarz,*
   184 F. Supp. 2d 311 (S.D.N.Y. 2001) ...........................................................14

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
   113 F.3d 373 (2d Cir. 1997) ..........................................................................14

Page(s)

*Leeds v. Meltz,*
  85 F.3d 51 (2d Cir. 1996) .......................................................................................8

*Lombard v. Booz Allen & Hamilton, Inc.,*
  280 F.3d 209 (2d Cir. 2002) ..................................................................................19

*Maxwell v. N.W. Ayer, Inc.,*
  605 N.Y.S.2d 174 (N.Y. Sup. Ct. 1993)................................................................18

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp,*
  108 F.3d 17 (2d. Cir. 1997) ............................................................................20, 21

*Noble v. Town Sports Int'l, Inc.,*
  707 N.Y.S.2d 89 (N.Y. App. Div. 2000).............................................................10

*Omega S.A. v. Omega Eng'g, Inc.,*
  396 F. Supp. 2d 166 (D. Conn. 2005)...................................................................10

*Pacheco v. United Med. Assocs., P.C.,*
  305 A.D.2d 711 (N.Y. App. Div. 2003) ...............................................................19

*Perry v. Beneficial Fin. Co.,*
  81 F.R.D. 490 (W.D.N.Y. 1979) ..........................................................................24

*Pirone v. MacMillan, Inc.,*
  894 F.2d 579 (2d Cir. 1990) ...........................................................................13, 18

*Sinatra v. Goodyear Tire & Rubber Co.,*
  435 F.2d 711 (9th Cir. 1970) ..........................................................................11, 17

*Soc'y for the Advancement of Educ., Inc. v. Gannett Co.,*
  1999 WL 33023 (S.D.N.Y. Jan. 21, 1999) ...........................................................10

*Solar Travel Corp. v. Nachtomi,*
  2001 WL 641151 (S.D.N.Y. June 8, 2001) ..........................................................20

*Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.,*
  137 F. Supp. 2d 1177 (C.D. Cal. 2001), *vacated after settlement*
  2002 WL 32387901 (C.D. Cal. Nov. 5, 2002) ...............................................15, 16

*Spencer v. Banco Real, S.A.,*
  623 F. Supp. 1008 (S.D.N.Y. 1985) .....................................................................24

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada,*
  374 F.3d 158 (2d Cir. 2004) ..................................................................................19

*Superior Models, Inc. v. Tolkien Enterps.,*
  211 U.S.P.Q. 876 (D. Del. 1981).........................................................................17

Page(s)

*TCPIP Holding Co. v. Haar Commc'ns, Inc.,*
   244 F.3d 88 (2d Cir. 2001) ..................................................................................16

*Titan Sports, Inc. v. Hellwig,*
   1999 WL 301695 (D. Conn. Apr. 26, 1999)...........................................................13

*Wilton v. Seven Falls Co.,*
   515 U.S. 277 (1995)..................................................................................20, 21, 23

*Yarmuth-Dion, Inc. v. D'ion Furs, Inc.,*
   835 F.2d 990 (2d Cir. 1987) ..................................................................................17

*Yurman Design, Inc. v. PAJ, Inc.,*
   262 F.3d 101 (2d Cir. 2001) ..................................................................................16

*Zoll v. Jordache Enterps., Inc.,*
   2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) .......................................................18

## STATUTES

15 U.S.C. § 1125.........................................................................................5, 8

17 U.S.C. § 101...........................................................................................12

28 U.S.C. § 1367....................................................................................3, 23, 25

Fed. R. Civ. P. 12(b)(6)......................................................................1, 5, 8, 16

N.Y. Civ. Rights Law § 51 .........................................................................2, 5, 9, 10

## MISCELLANEOUS

McCarthy on Trademarks & Unfair Competition § 10:42.................................................13

Trademark Manual of Examining Procedure § 1301.02(b).................................................15

Spanish Broadcasting System, Inc. ("SBS" or "plaintiff") submits this memorandum in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) to dismiss the First Amended Counterclaims of defendants Luis Jimenez, Luis Jimenez Enterprises, LLC and Alma Entertainment, LLC (together, "Jimenez") for failure to state a claim for relief as to Counts I-VI and for lack of subject matter jurisdiction with respect to Counts VII-IX.

## PRELIMINARY STATEMENT

SBS commenced this action on January 26, 2007, alleging claims for domain name cybersquatting, trademark infringement, false designation of origin, breach of contract and other claims arising out of the wrongful conduct of defendants, including former SBS employee and radio host Luis Jimenez, following Luis Jimenez's departure from SBS's radio show *El Vacilón de la Mañana* (the "*El Vacilón* show"). SBS alleges that despite its undisputed ownership of the registered trademarks EL VACILON and VACILON DE LA MANANA, and despite Luis Jimenez's Employment Agreement which states that SBS owns all rights in and has a perpetual right to use the intellectual property relating to the *El Vacilón* show, defendants, *inter alia*, have (1) registered and claimed ownership of the domain names elvacilon.com and elvacilon.net (which until recently were used by SBS for a popular website that promoted and distributed the *El Vacilón* show online); (2) used those domain names to sabotage SBS's *El Vacilón* website; (3) registered and claimed ownership of the domain name elvacilonthemovie.com; (4) commenced unauthorized distribution of a DVD Movie entitled *EL VACILON: The Movie*; and (5) claimed ownership of and used various characters and skits ("*El Vacilón* material") that have been featured on SBS's show for many years.

Confirming their mistaken belief that the *El Vacilón* show is the personal property of Luis Jimenez, when in fact it belongs to SBS, defendants Luis Jimenez, Alma Jimenez, Luis Jimenez Enterprises, LLC and Alma Entertainment, LLC (together, "Jimenez") have alleged that Jimenez

owns the *El Vacilón* material and that SBS has hired new hosts that purportedly sound like Luis
Jimenez and his former co-star (and current SBS employee) Raymond ("Moonshadow")
Broussard, and have asserted counterclaims for unfair competition under the Lanham Act and
New York common law (Counts I and II, respectively), trademark infringement under New York
common law (Count III), and violation of New York Civil Rights Law § 51 (Count IV). In
addition, Jimenez purports to allege two counterclaims for tortious interference (Counts V and
VI) as well as two counterclaims for money purportedly owed to Jimenez by SBS (Counts VII
and VIII). And, in an effort to avoid a prior pending state court lawsuit relating to Luis
Jimenez's breach of the non-solicitation and non-interference provisions of his Employment
Agreement, Jimenez also has asserted a declaratory judgment counterclaim (Count IX) which
asks this Court to declare that SBS's earlier-filed state law action is without merit.[1]

  Jimenez's unfair competition, trademark infringement and right of publicity claims (*i.e.*,
Counts I, II, III and IV) are squarely barred by the Employment Agreement, the existence of
which defendants concede, for several reasons. First, the agreement expressly states that SBS,
*not* Jimenez, owns all right to all intellectual property relating to Luis Jimenez's work on the *El
Vacilón* show. Second, Luis Jimenez consented in the agreement to SBS's use of the very
material at issue in the Counterclaims. Thus, the agreement grants to SBS "the irrevocable and
exclusive right . . . in perpetuity throughout the universe to use and to grant others the right to
use Employee's *name, actual or simulated likeness, nickname(s), character name(s), slogans,*
biography *and other personal identification.*" Third, the agreement provides that SBS owns all

---

[1] The remaining count of the First Amended Counterclaims, Count X, asserts a declaratory
judgment claim relating to ownership of the disputed domain names. SBS is not moving at this
time to dismiss Count X, but denies all material allegations in that Count and refers to its First
Amended Complaint for SBS's allegations regarding the disputed domain names.

copyrights in the *El Vacilón* show and has the right to create "derivative works and other modifications" of those rights in the *El Vacilón* show, which necessarily includes derivatives based upon the very material that Jimenez now seeks to bar SBS from using.

Counts I, II and III, which purport to assert essentially trademark-type claims arising from alleged use of certain *El Vacilón* "characters" and "skits," fail to state claims for several additional reasons. To begin with, the traits or elements of "characters" or "skits," as a matter of law, are not protectable under trademark or unfair competition law, and even if they were, Jimenez fails to identify the nature and scope of the asserted rights. Moreover, Jimenez does not allege any use of the material at issue in a trademark manner, or that the claimed marks are distinctive or source-identifying as required for protection under trademark and unfair competition law. And, the claims under New York common law (Counts II and III) are barred because there is no cause of action under New York common law for the imitation of a performer; any such claims are limited to the New York right of publicity statute.

Counts V and VI, for tortious interference, fail to state claims for relief because they do not allege the requisite interference and wrongful means, nor do they allege resulting injury as required under New York law. As for Counts VII, VIII and IX, those claims arise from contract disputes wholly unrelated to the claims in this case that arise under the Court's original jurisdiction, and should be dismissed for lack of jurisdiction under 28 U.S.C. § 1367. Lastly, the Court should exercise its broad discretion to decline jurisdiction over Count IX, which expressly seeks determination of the merits of an earlier-filed state court case that raises issues purely of state law and arises from different operative facts from the remainder of this case.

## BACKGROUND AND ALLEGATIONS

### Jimenez's Allegations Regarding *El Vacilón* Characters and Skits

Jimenez alleges that in 1993 SBS recruited Luis Jimenez to host the *El Vacilón* show. Am. Counterclaims ¶ 9. Jimenez alleges that prior to his employment at SBS, Luis Jimenez hosted an afternoon radio show in Orlando, Florida. *Id.* ¶ 8. Jimenez further alleges, albeit without any detail, that during Luis Jimenez's employment in Orlando, he "created many memorable skits and characters to which he has retained intellectual property rights (including, but not limited to the skits and characters using the names and marks Findingo, Caísté, Dr. Hector Tilla, Madame Mélo, Goyito, Susy, Papo and Tito Metralla)," and that he used these skits and characters "on radio and in theater productions" and developed "a loyal fan base." *Id.* Jimenez also alleges without detail that upon joining SBS to host *El Vacilón*, Luis Jimenez performed and used the aforementioned skits and characters. *Id.* ¶ 9. Jimenez alleges that in the years that followed, both Luis Jimenez and the *El Vacilón* show became popular. *Id.*

Jimenez alleges that upon Luis Jimenez's recent departure from SBS and the *El Vacilón* show, "SBS engaged in a course of conduct designed to trick its listening audience into believing that Luis is still hosting 'El Vacilón de la Mañana.'" *Id.* ¶ 13. In particular, Jimenez alleges that SBS hired new hosts whose voices purportedly "sound identical to Luis [Jimenez] and his former counterpart Raymond Broussard" (also known as "Moonshadow," and not a party to this action) "in sound, voice and intonation." *Id.* ¶ 14. Jimenez also alleges that the new hosts are "improperly using Luis's own characters" and that one cast member has referred to one of the new hosts by the name "Luis." *Id.*

Jimenez alleges that SBS "is infringing on Luis's trademark rights by continuing to use and refer to Luis's characters and skits on 'El Vacilón de la Mañana' without his permission" and is "trading off the goodwill Luis developed with his listeners, unfairly competing with Luis

by using [Luis's] likeness and intellectual property." *Id.* ¶ 16. Based on the foregoing

allegations, Jimenez asserts claims for unfair competition under 15 U.S.C. § 1125, common law

unfair competition and common law trademark infringement. Jimenez also claims violation of

his right of publicity under New York Civil Rights Law § 51.

**Luis Jimenez's Employment Agreement With SBS**

     As Jimenez admits, in connection with Luis Jimenez's employment with SBS, Luis

Jimenez, through LJ Enterprises, voluntarily agreed to and executed an Employment,

Confidentiality and Noncompetition Agreement, dated January 1, 2001, and running through

December 31, 2006. *See* First Amended Complaint ¶ 27 & Ex. C; First Amended Answer ¶ 27;

First Amended Counterclaims ¶ 10. The agreement states that Luis Jimenez's duties include,

*inter alia*, "[p]roducing and hosting 'El Vacilón de la Mañana.'" Empl. Agr. ¶ 1(c)(i).

     Jimenez alleges that the Employment Agreement "expressly provides that SBS owns only

those characters and skits Luis created during the time he was employed at SBS." Am.

Counterclaims ¶ 10. In fact, the agreement, a copy of which is attached to SBS's First Amended

Complaint,[2] confirms that all such rights relating to the *El Vacilón* show belong to SBS:

> SBS owns or shall own all right, title and interest throughout the Universe in and
> to Employee's and SBS's work product and all Copyright, Trademark and Other
> Intellectual Property Rights in and related thereto ("Intellectual Property"). *Id.*
> ¶ 5(a).

---

[2]    Jimenez admits the existence of his Employment Agreement with SBS that is attached to SBS's
Complaint as Exhibit C, and refers to agreement in the Counterclaims. *See* First Amended
Complaint ¶ 27 & Ex. C; First Amended Answer ¶ 27; First Amended Counterclaims ¶ 10. It is
settled that in deciding a motion to dismiss under Rule 12(b)(6), a court can consider documents,
such as a contract, attached to or referred to in the pleadings. *See, e.g., Chambers v. Time
Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002) (properly considering contract in deciding
motion to dismiss); *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms.,* 298 F.3d 136, 140
(2d Cir. 2002) (affirming motion to dismiss); *Bridgeport Music, Inc. v. Universal Music Group,
Inc.,* 440 F. Supp. 2d 342 (S.D.N.Y. 2006) (considering agreement in granting plaintiffs' motion
to dismiss).

It also states that SBS can create derivative works from that Intellectual Property:

> Employee . . . confirms that SBS shall have the right, in addition to other rights and notwithstanding the termination of Employee's employment for any reason, to make or to have made and to own enhancement, derivative works and other modifications to any part of the Intellectual Property. *Id.* ¶ 5(c).

Moreover, the agreement specifically grants to SBS:

> the irrevocable and exclusive right (whether this Agreement expires in its normal course or is terminated for any reason whatsoever) in perpetuity throughout the universe to use and to grant others the right to use Employee's name, actual or simulated likeness, nickname(s), character name(s), slogans, biography and other personal identification in and in connection with the following uses:
>
>> (i) Advertising, publicizing or otherwise exploiting . . . the results and proceeds of Employee's services hereunder, and any rights granted to SBS hereunder; and
>>
>> (ii) Advertising, publicizing or otherwise exploiting the name, product or services of SBS or any affiliate or any successor, licensee or assign. . . . *Id.* ¶ 6.

Lastly, the agreement contains a merger clause which confirms that the parties' writing is a complete integration of their agreement:

> The Agreement shall constitute the entire agreement concerning the subject matter hereof between the parties, superseding all previous agreements, memoranda of understanding, negotiations, and representations made prior to the effective date of this Agreement. This Agreement shall be modified or amended only by written agreement executed by Employee and SBS. *Id.* ¶ 11(i).

### Jimenez's Claims for Tortious Interference and Payments Owed

Counts V and VI purport to assert state law claims for tortious interference. Specifically, in Count V, Jimenez alleges that "Luis has a business relationship with a third party, namely Univision" and that "SBS has . . . intentionally interfered with Luis's business relationship with Univision" by sending "a defamatory letter to Univision, asserting that SBS has filed suit against Luis and threatened to take additional legal action . . . ." Am. Counterclaims ¶¶ 52-53. In Count VI, Jimenez alleges that "SBS has interfered with Luis's prospects for selling the DVD by

misrepresenting to Register.com, Inc., that it owned the domain names . . . thereby causing Register.com, Inc., to legally lock the domain names, preventing Luis from using the website and preventing him from promoting DVD sales." *Id.* ¶ 57. Both counts allege unspecified damages purportedly resulting from this alleged conduct.

In addition, Counts VII and VIII purported to assert claims for breach of contract and conversion under state law, arising from SBS's alleged failure to pay Luis Jimenez "funds for live readings, ratings and advertising bonuses." *Id.* ¶¶ 62, 67

**The State Court Action and Jimenez's Declaratory Judgment Counterclaim**

On January 9, 2007, nearly three weeks prior to filing this suit, SBS commenced an action against Luis Jimenez, Luis Jimenez Enterprises, LLC and Alma Entertainment LLC in the Supreme Court of the State of New York County of New York, Commercial Division, Index No. 600078/07 (the "State Court Action"). *See* Ex. 1 to the Beckman Dec. The State Court Action asserts two claims – tortious interference with contractual relations between SBS and Mr. Jimenez's former co-host Raymond Broussard, and breach of the non-solicitation provisions of Luis Jimenez's Employment Agreement. *Id.* ¶¶ 42-54 of Ex. 1 to the Beckman Dec. These claims arise from the state court defendants' improper solicitation of Mr. Broussard and at least six other employees of the *El Vacilón* show. *Id.* ¶¶ 31-37 of Ex. 1 to the Beckman Dec. On February 13, defendants moved to dismiss or stay the State Court Action pursuant to New York C.P.L.R. § 3211(a)(4) on the mistaken ground that it involves the same claims as this action, a motion that SBS has opposed.

Count IX of Jimenez's Counterclaims seeks a declaratory judgment from this Court on the merits of the State Court Action. Thus, the count asserts that SBS has commenced the State Court Action asserting tortuous interference and breach of contract, and asks the Court to declare that Defendants have not engaged in such conduct. Am. Counterclaims ¶¶ 72, 74.

**ARGUMENT**

A motion to dismiss made pursuant to Fed. R. Civ. P. Rule 12(b)(6) should be granted if "plaintiff can prove no set of facts which would entitle him or her to relief." *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002). In applying this standard, the Court should accept as true all well-pleaded allegations contained in plaintiff's Complaint and should view the complaint in the light most favorable to the plaintiff. *Id.; Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). At the same time, "conclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *See, e.g., In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400 n.3 (2d Cir. 1994). Moreover, as noted above (*supra*, note 2), the Court can consider, on a motion to dismiss, written agreements, such as the Employment Agreement, that are referred to in the pleadings. *See, e.g., Gryl*, 298 F.3d at 140. Under this familiar standard, it is apparent that the Counterclaims do not state a claim for relief against SBS.

**I.     COUNTS I, II, III AND IV ARE FORECLOSED BY THE EMPLOYMENT AGREEMENT BETWEEN JIMENEZ AND SBS**

In Counts I and II of the Counterclaims, Jimenez asserts that SBS has engaged in unfair competition through the "unauthorized use" of (1) "characters and skits" allegedly "owned" by Luis Jimenez; and (2) hosts that "sound identically [sic] to Luis and his former co-host, Moonshadow." Am. Counterclaims ¶¶ 29, 33. In Count I, Jimenez alleges that this conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and in Count II, constitutes unfair competition under New York common law. Count III also asserts that SBS's alleged "unauthorized use of the names and marks Findingo, Caísté, Dr. Hector Tilla, Madame Mélo, Goyito, Susy, Papo and Tito Metralla" constitutes trademark infringement under New York common law. Am. Counterclaims ¶ 38. Jimenez asserts in Count IV of the Counterclaims that

SBS has violated Luis Jimenez's right of publicity in his name, likeness and sound of his voice under Section 51 of the New York Civil Rights Law. *Id.* ¶ 42.[3]

For the several independent reasons set forth below, each of Jimenez's claims for unfair competition, common law trademark infringement and violation of the New York right of publicity statute is squarely barred by the Employment Agreement between SBS and Jimenez.

A.   Jimenez's Claim of Rights in the *El Vacilón* Characters, Skits and Names Is Foreclosed by the Employment Agreement.

On the face of the Counterclaims, taking into account the Employment Agreement attached to the Complaint, it is clear that Jimenez does not own the *El Vacilón* characters, skits, names and material that he alleges are infringed by SBS. As set forth above, the Employment Agreement expressly states that "SBS owns or shall own all right, title and interest throughout the Universe in and to Employee's and SBS's *work product* and all Copyright, Trademark and Other Intellectual Property Rights in and related thereto." Empl. Agr. ¶ 5 (emphasis added). Taking as true the well-pleaded allegations of the Counterclaims, Luis Jimenez – pursuant to his work for SBS as host of the *El Vacilón* show, *see* Empl. Agr. ¶ 1(c)(i) – used the *El Vacilón* characters, skits and names on SBS's *El Vacilón* show. Am. Counterclaims ¶ 9. Plainly, those characters, skits and names are "related" to Luis Jimenez's work product under the Employment Agreement, are "Intellectual Property" under the agreement, and therefore are the property of SBS rather than Jimenez.

---

[3]   Counts I, II and IV also refer to the alleged use of a voice purportedly similar to that of Luis Jimenez's former co-host Moonshadow. However, Moonshadow is not a party to this litigation and Jimenez does not even purport to allege standing to assert any claims on his behalf.

B.   Jimenez Consented in the Employment Agreement to SBS's Use of the *El Vacilón* Characters, Skits and Names and His Name, Likeness and Voice.

Jimenez's unfair competition, trademark infringement and right of publicity claims fail for the additional reason that Luis Jimenez expressly consented in the Employment Agreement to the very conduct about which he now complains. It is settled that consent is a defense to claims of unfair competition and trademark infringement. *See, e.g., Omega S.A. v. Omega Eng'g, Inc.,* 396 F. Supp. 2d 166, 175 (D. Conn. 2005); *Soc'y for the Advancement of Educ., Inc. v. Gannett Co.,* 1999 WL 33023, at *9 (S.D.N.Y. Jan. 21, 1999). Similarly, the New York right of publicity statute provides a claim for relief to a person whose "name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade *without . . . written consent.*" N.Y. Civ. Rights Law § 51 (emphasis added); *see, e.g., Cory v. Nintendo of Am., Inc.,* 592 N.Y.S.2d 6 (N.Y. App. Div. 1993) (dismissing right of publicity claim because defendant had obtained written consent); *Noble v. Town Sports Int'l, Inc.,* 707 N.Y.S.2d. 89 (N.Y. App. Div. 2000) (same); *Fleischer v. W. P. I. X., Inc.,* 213 N.Y.S.2d 632 (N.Y. Sup. Ct. 1961) (same).

Here, such consent is manifest. The Employment Agreement expressly grants to SBS:

the irrevocable and exclusive right (whether this Agreement expires in its normal course or is terminated for any reason whatsoever) in perpetuity throughout the universe to use and to grant others the right to use Employee's *name, actual or simulated likeness, nickname(s), character name(s), slogans, biography and other personal identification* in and in connection with the following uses:

(i) Advertising, publicizing or otherwise exploiting . . . the results and proceeds of Employee's services hereunder, and any rights granted to SBS hereunder; and

(ii) Advertising, publicizing or otherwise exploiting the name, product or services of SBS or any affiliate or any successor, licensee or assign. . . . Empl. Agr. ¶ 6 (emphasis added).

Any use by SBS of the characters, skits and names, and alleged imitation of Jimenez's voice (and alleged use "Luis"), in connection with its radio services and the exploitation of Jimenez's prior services on the *El Vacilon* show, clearly falls within the terms of this broad consent.

C.     SBS's Ownership of Copyright in the *El Vacilón* Show and Confirmed Right to Prepare Derivative Works of the *El Vacilón* Show Foreclose Any Unfair Competition and Trademark Claims by Jimenez.

Wholly apart from the express consent provisions of Paragraph 6, the Employment Agreement also provides that SBS owns all copyright in *El Vacilón* show (*see* Empl. Agr. ¶ 5(a)) and expressly confirms that SBS has the right to create "derivative works and other modifications" of those intellectual property rights in the *El Vacilón* show (*see* Empl. Agr. ¶ 5(c)).  As defendants allege, the characters, skits and names that Jimenez seeks to bar SBS from using were part of the *El Vacilón* show.  Counterclaims ¶ 9.  Even assuming, *arguendo*, that Jimenez could show trademark rights in the *El Vacilón* material at issue (and, as set forth below, he cannot do so), SBS's ownership of copyright in the *El Vacilón* show embodying that material is fatal to Jimenez's claims.  *See, e.g., Booth v. Colgate-Palmolive Co.*, 362 F. Supp. 343, 348-49 (S.D.N.Y. 1973) (rejecting Section 43(a) claim where plaintiff complained of defendant's imitation of her voice in connection with character for which defendant had copyright permissions); *Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711 (9th Cir. 1970) (rejecting unfair competition claim by celebrity singer alleging imitation of her voice, where defendant had licensed rights in the copyright to the challenged material).  Moreover, the express confirmation of SBS's right to create derivative works from prior *El Vacilon* shows operates as a consent to use the material embodied in the show, for a derivative work is by definition a work that is based

upon and merely revises or otherwise modifies a preexisting work.[4]   Particularly in light of the

broad express consent provision of Paragraph 6, SBS's ownership of copyright and its right to

create derivatives bars any claim by defendants alleging misuse of the material at issue.

## II.   JIMENEZ FAILS TO STATE CLAIMS FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER FEDERAL AND STATE LAW

As set forth above, Counts I and II allege claims for unfair competition under Section

43(a) of the Lanham Act and New York common law arising from SBS's alleged unauthorized

use of (1) "characters and skits" allegedly "owned" by Luis Jimenez; and (2) hosts that "sound

identically [sic] to Luis and his former co-host, Moonshadow." Am. Counterclaims ¶¶ 29, 33.

Count III alleges a state trademark infringement claim based on SBS's alleged unauthorized use

of the names and marks Findingo, Caísté, Dr. Hector Tilla, Madame Mélo, Goyito, Susy, Papo

and Tito Metralla. *Id.* ¶ 38.

In order to state a claim for relief for trademark infringement or unfair competition, a

party must allege, *inter alia*, protectable rights in the claimed marks and likelihood of confusion.

*See, e.g., Empresa Cubana Del Tabaco v. Culbro Corp.*, 399 F.3d 462, 478-79 (2d Cir. 2005)

(claim relating to allegedly infringing use of purported designation of origin is "within the

category of Section 43(a) cases that involve claims 'for infringement of rights in a mark acquired

by use'" and requires proof of rights in a "mark" and likelihood of confusion).[5]  Moreover, the

---

[4]     A derivative work is one "based upon one or more preexisting works, [including] any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

[5]     As the Court of Appeals has explained, Section 43(a) of the Lanham Act "can never be a federal codification of the overall law of unfair competition." *Empresa*, 399 F.3d at 478. While the statute "includes causes of action grounded in allegations of 'false or misleading description of fact,' 'false or misleading representation of fact,' or 'false designation of geographic origin,'" where, as here, the claim relates to the allegedly infringing use of a purported symbol, device or other designation of origin, it is "within the category of Section 43(a) cases that involve claims 'for infringement of rights in a mark acquired by use.'" *Id.* (citation omitted). In such cases, the plaintiff must allege and prove rights in a "mark" as well as likelihood of confusion. *Id.* at 478-
(continued...)

standards for bringing a claim under Section 43(a) of the Lanham Act are substantially the same as those applied to claims brought under the New York common law for unfair competition and trademark infringement. *See, e.g., Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 543 (1977); *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581-82 (2d Cir. 1990); *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997).

Applying these prerequisites to Jimenez's counterclaims, Counts I, II and III fail to state claims for relief for the several additional reasons set forth below.

A.  The "Characters" and "Skits" Asserted by Jimenez Are Not Protectable Under Unfair Competition and Trademark Infringement Law.

First, to the extent that Jimenez claims rights in *El Vacilon* "characters" and "skits," as opposed to the *names* of the characters and skits, they are not protectable under trademark and unfair competition law. It is true that "where the product sold by plaintiff is 'entertainment' in one form or another, then not only the advertising of the product but also an ingredient of the product itself can amount to a trademark protectable under § 43(a) because the ingredient can come to symbolize the plaintiff or its product in the public mind." *D.C. Comics v. Kryptonite Corp.*, 336 F. Supp. 2d 324, 332 (S.D.N.Y. 2004). However, while the "[p]rotectable 'ingredients' recognized in this circuit include the names and nicknames of entertainment characters . . ., as well as their physical appearances and costumes," they *do not* include "their physical abilities or personality traits." *Id.*; *see also D.C. Comics, Inc. v. Filmation Assocs.*, 486 F. Supp. 1273, 1277 (S.D.N.Y. 1980); McCarthy on Trademarks & Unfair Competition § 10:42. As another court has explained, character traits are the subject of *copyright* rather than trademark law. *See Titan Sports, Inc. v. Hellwig*, 1999 WL 301695, at *12 (D. Conn. Apr. 26,

---

79. Indeed, defendants concede as much in their brief in support of their motion for preliminary injunction. Def. PI Mem. [Docket # __ ], at 8-10.

1999) (character traits are the subject of copyright rather than trademark law). Similarly, the Court of Appeals has held that a musical composition (analogous to a skit), which is properly the subject of copyright law, cannot serve the source-identifying function of a trademark. *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000).

Under this settled law, the traits of radio show characters and the features or elements of radio skits themselves cannot serve as trademarks. Thus, to the extent that Counts I, II or III purport to seek protection for *elements or traits* of characters and skits (as at least Counts I and II appear to do), they fail to state a claim for relief. Even if such elements and traits were protectable under trademark infringement or unfair competition, moreover, any claims relating to such elements or traits – like any claims based on the names of characters and skits alleged in Count III – are foreclosed for the several additional reasons set forth below.

What is more, even if "characters" and "skits" were protectable in trademark or unfair competition law, the counterclaims fail to identify the scope of any claimed rights in such material. It is settled that a plaintiff claiming rights in a design, symbol or other non-traditional mark under the unfair competition law must offer "a precise expression of the character and scope of the claimed" mark. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) ("[A] plaintiff's inability to explain to a court exactly which aspects of its . . . design(s) merit protection may indicate that its claim is pitched at an improper level of generality, *i.e.*, the claimant seeks protection for an unprotectable style, theme or idea."); *Kaufman & Fisher Wish Co. v. F.A.O. Schwarz*, 184 F. Supp. 2d 311, 317 (S.D.N.Y. 2001) ("the plaintiff must precisely articulate the specific elements that comprise its distinct trade dress, so that courts properly may evaluate claims of infringement . . . .").

Thus, in *Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.*, 137 F. Supp. 2d
1177, 1196 (C.D. Cal. 2001), *vacated after settlement*, 2002 WL 32387901 (C.D. Cal. Nov. 5,
2002), where plaintiff claimed trademark rights in "the character Zorro," the court held that "[t]o
claim ownership of a trademark . . . , Plaintiff must first identify the mark they seek to protect."
As set forth above, the elements of the *El Vacilón* characters and skits are not protectable under
unfair competition law to begin with. But even if they were, Jimenez merely alleges their names,
and provides no allegations at all explaining what elements are claimed by defendants and
allegedly infringed by SBS.

B.     Counts I, II and III Fail to Allege Any Trademark Use of the Claimed Matter.

To create trademark rights, a designation must perform the job of source identification --
"to indicate the source" of the goods or service. 15 U.S.C. § 1127 (defining "mark"); *see, e.g.,*
*Clairol, Inc. v. Gillette Co.*, 389 F.2d 264, 269 (2d Cir. 1968) ("[T]he function of a trademark is
to indicate the origin of the products to which it is attached.").

The Counterclaims, however, fail to allege any facts supporting a claim that any of the *El*
*Vacilón* names, characters or skits alleged were *used as trademarks by* Luis Jimenez. To begin
with, as set forth above, the elements or traits of characters or skits do not function as
trademarks. As for the character names, while they can in theory serve as trademarks, the
ordinary use of a character name is not a trademark use. *See Hormel Foods Corp. v. Jim Henson*
*Prods.*, 73 F.3d 497, 506 (2d Cir. 1996); *see also* TRADEMARK MANUAL OF EXAMINING
PROCEDURE § 1301.02(b) (a character name "does not function as a service mark unless it
identifies and distinguishes services in addition to identifying the character. If . . . used only to
identify the character, it is not registrable as a service mark."). The Counterclaims do not even
attempt to allege that the names claimed by Jimenez were used as anything more than names to

identify characters and skits, and therefore fail to state a claim for trademark infringement or unfair competition.

     C.     Counts I, II and III Fail to Allege That Any Matter in Which Jimenez Claims Rights Is Source-Identifying.

     Counts I, II and III of the Counterclaims also fail because they do not allege that the claimed characters, skits, names or voice at issue have obtained secondary meaning such that they are protectable and subject to confusion as to source.[6] It is settled that where a plaintiff claims trademark rights in an entertainment character, they must allege and prove that the claimed mark has "acquired secondary meaning and that the public believes that it derives from a single source." *See, e.g., Sony Pictures,* 137 F. Supp. 2d at 1197 (holding that even if the plaintiffs had been "able to define a trademark and show they owned rights to the character Zorro," they had not shown that Zorro had acquired secondary meaning). Indeed, it is the general rule that a party claiming rights in a non-traditional mark such as the design of a product must allege and prove secondary meaning as well as likelihood of confusion. *See, e.g., Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 115 (2d Cir. 2001). The same requirement applies to trademark claims in ordinary descriptive words and names. Thus, in *Arnold v. ABC, Inc.,* 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007), Judge Daniels recently granted a Rule 12(b)(6) motion to dismiss a claim that defendant had infringed plaintiff's mark WHAT'S YOUR PROBLEM, used as a television show title, holding, *inter alia,* that plaintiff failed to allege that the claimed mark had achieved secondary meaning. And, the Second Circuit has stated that, "[f]or the purpose of trademark analysis, personal names – both surnames and first names ·· are generally regarded as

---

[6]     In "trademark parlance," a mark acquires a "*secondary meaning*" when the public "come[s] to associate the mark with the goods or services of the user." *TCPIP Holding Co. v. Haar Commc'ns, Inc.,* 244 F.3d 88, 94 (2d Cir. 2001).

descriptive terms which require proof of secondary meaning." *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988); *see also Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987); *accord Superior Models, Inc. v. Tolkien Enterps.*, 211 U.S.P.Q. 876 (D. Del. 1981) (plaintiff claiming trademark rights in literary character names had to show that names had achieved secondary meaning). Similarly, the courts have required plaintiffs claiming imitation of their voices to show that their voices are sufficiently unique to serve as a trademark and be protectable. *See, e.g., Sinatra*, 435 F.2d at 716 (rejecting unfair competition claim because plaintiff's voice was not sufficiently unique to be protectable); *Booth*, 362 F. Supp. at 349 (no indication that plaintiff's voice served as a trademark).

The Counterclaims do not even attempt to allege that the characters, skits and names in which Jimenez claims rights have achieved secondary meaning or otherwise are source-identifying. Nor do they allege that Luis Jimenez's voice is so distinctive as to be source-identifying. Jimenez merely alleges, in wholly conclusory fashion, that Luis Jimenez "created many memorable skits and characters to which he has retained intellectual property rights" and that he performed such "skits and characters using these names and marks on radio and in theater productions, developing a loyal fan base." Counterclaims ¶ 8. It is settled that such conclusory allegations should not be credited on a motion to dismiss. *See, e.g. In re Am. Express Co.*, 39 F.3d at 400 n.3; *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771-72 (2d Cir. 1994). Even construing these allegations liberally, they fail to allege that the claimed characters, skits and names achieved secondary meaning by virtue of Jimenez's use of them, or that they are otherwise source-identifying. Similarly, Jimenez has made absolutely no allegations that the sound of his voice is sufficiently distinctive to be source-identifying and protectable.

D.     Counts II and III Are Subsumed Within the Right of Publicity Law.

Jimenez's common law claims for unfair competition (Count II) and trademark

infringement (Count III) are barred for the additional reason that there is no cause of action under

New York common law for the imitation of a performer, and any such claims are limited to the

New York right of publicity statute.  The essence of these counts is that by using Luis Jimenez's

alleged material (*i.e.* skits, characters and names) and a purported imitation of his voice, SBS has

allegedly engaged in common law unfair competition and trademark infringement.  New York,

however, does not recognize a common law cause of action for the unauthorized imitation of a

performer.  *See, e.g., Pirone v. MacMillan, Inc.*, 894 F.2d at 586 ("New York courts have

indicated clearly that the Civil Rights Law preempts any common law right of publicity action");

*Zoll v. Jordache Enterps., Inc.*, 2002 WL 31873461, at *15 (S.D.N.Y. Dec. 24, 2002) (holding

that such claims are subsumed by the statutory cause of action created by §§ 50 and 51 of the

Civil Rights Law); *Grodin v. Liberty Cable*, 664 N.Y.S.2d 276 (N.Y. App. Div. 1997) (holding

that "it was error not to dismiss plaintiff's causes of action for negligence and unjust enrichment,

there being no common-law right of privacy in New York" where the plaintiff brought an action

to recover damages for the unauthorized reuse of his image and voice in a television

commercial); *Maxwell v. N.W. Ayer, Inc.*, 605 N.Y.S.2d 174, 177 (N.Y. Sup. Ct. 1993) ("the

courts have consistently dismissed common law claims . . . based on an unauthorized use of an

attribute of identity"); *Booth*, 362 F. Supp. 343 (same).  Accordingly, Jimenez's only remedy

under New York law is under the right of publicity statute that is asserted in Count IV (and

which, for the reasons set forth above, also fails to state a claim for relief).

## III.   COUNTS V AND VI FAIL TO STATE TORTIOUS INTERFERENCE CLAIMS

Jimenez's two claims for tortious interference also fail to state claims for relief.  Tortious

interference with business relations requires (1) the plaintiff had business relations with a third

party, (2) the defendants interfered with those relations, (3) the defendants acted for a wrongful

purpose or used dishonest, unfair or improper means, and (4) defendants' acts injured the

relationship. *E.g., Lombard v. Booz Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002).

Moreover, any injury must be proximately caused by the allegedly wrongful interference. *State

Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004).

Neither Count V nor Count VI pleads these requisite elements. Count V merely alleges

that "Luis has a business relationship with a third party, namely Univision" and that "SBS has . .

. intentionally interfered with Luis's business relationship with Univision" by sending "a

defamatory letter to Univision, asserting that SBS has filed suit against Luis and threatened to

take additional legal action . . . . " Am. Counterclaims ¶¶ 52-53.[7]  On its face, that description of

the letter fails to state a claim. In fact, SBS's letter hardly constitutes wrongful interference; it

merely asked about an article published that day reporting Luis Jimenez's new show would be

entitled *El Vacilon de Luis*, and informed Univision that such a name would infringe SBS's

registered trademarks. *See* Ex. 2 to the Beckman Dec. More importantly, for purposes of this

motion to dismiss, Jimenez fails to allege that any wrongful conduct was the proximate cause of

damage to Jimenez, and, indeed, does not allege ***any damage at all.*** Jimenez merely asserts the

boilerplate "acts by SBS have caused, and continue to cause, injury and damage to Luis . . . . "

Am. Counterclaims ¶ 54. Such boilerplate allegations of injury do not state a claim for relief.

*See Jabbour v. Albany Med. Ctr.*, 237 A.D.2d 787, 790 (N.Y. App. Div. 1997) ("Along with

demonstrating wrongful means, a plaintiff must also establish that the wrongful acts were the

proximate cause of the rejection of the plaintiff's proposed contractual relations."); *Pacheco v.

United Med. Assocs., P.C.*, 305 A.D.2d. 711 (N.Y. App. Div. 2003) (motion to dismiss granted

---

[7]     Notably, Jimenez does ***not*** assert a claim for defamation.

because "plaintiff has not alleged how or whether his contractual relationships, prospective or current . . . were actually damaged by defendants' conduct. That is, "there is no allegation that plaintiff was actually and wrongfully prevented from entering into or continuing in a specific business relationship as a result of defendants' conduct.'"). The simple rule says it best: no harm, no foul. Count V should be dismissed.

Count VI is similarly fatally deficient. It alleges that "SBS has interfered with Luis's prospects for selling the DVD by misrepresenting to Register.com, Inc., that it owned the domain names . . . thereby causing Register.com, Inc., to legally lock the domain names," and that SBS thereby interfered with Luis Jimenez's "prospects for selling the DVD." Am. Counterclaims ¶ 57. Such conclusory allegations of lost business do not suffice for a claim of tortious interference. *See, e.g., Solar Travel Corp. v. Nachtomi*, 2001 WL 641151, at *10 (S.D.N.Y. June 8, 2001) (granting motion to dismiss tortious interference claim because plaintiff "merely alleges that it 'lost business from customers . . . as well as lost prospective business . . . .'"). Accordingly, Count VI should be dismissed.

## IV. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER JIMENEZ'S CLAIM FOR DECLARATORY RELIEF IN COUNT IX

Lastly, as noted above, Count IX seeks a declaration that Jimenez has not engaged in the wrongful conduct that is alleged by SBS in the earlier-filed state court proceeding that is pending between the parties in New York County Supreme Court. Counterclaims ¶¶ 72, 74.

It is settled that where a party seeks a declaratory judgment with respect to state law matters already at issue in an earlier-filed state court proceeding, the Court should decline to exercise jurisdiction and dismiss the declaratory action in the interest of judicial economy and federal-state comity. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp*, 108 F.3d 17, 22 (2d. Cir. 1997), *citing Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995). In *Wilton*, the Supreme

Court held that district courts have broad discretion to decline to exercise jurisdiction over declaratory judgment claims that are duplicative of pending state court actions, observing that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 515 U.S. at 282.  In such a situation, "[n]o useful purpose would be served by this Court proceeding to declare the rights of the parties when the [state] court necessarily will do precisely the same thing in determining whether to grant or deny . . . relief." *Great Am. Ins. Co. v. A.G. Ship Maint. Corp.*, 368 F. Supp. 2d 364, 365-66 (S.D.N.Y. 2005).

As the Second Circuit has explained, *Wilton* identified several factors to consider when determining whether to exercise jurisdiction over a declaratory judgment claim that presents issues that are the subject of a state court proceeding:

> [T]he district court's inquiry "should examine 'the scope of the pending state court proceeding and the nature of defenses open there,'" *id.* at ----, 115 S.Ct. at 2141 (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175-76), and should entail consideration of, *inter alia*, "'whether the claims of all parties in interest can satisfactorily be adjudicated in [the pending state court] proceeding.'" *Id.* (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175-76). According to the *Wilton* court, "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." *Id.* (citation omitted).

*Nat'l Union Fire Ins.* 108 F.3d at 22.  Other factors are whether the state action was initiated prior to the declaratory judgment claim, whether the matter raises issues of state law, whether the declaratory relief claimant's rights would be adequately protected in the state action, and whether the request for declaratory relief is an attempt at "procedural fencing." *See, e.g., Awosting Reserve LLC v. Chaffin Light Assoc. Co.*, 296 F. Supp. 2d 470, 475 (S.D.N.Y. 2003) (Marrero, J.); *Great Am. Ins. Co.*, 368 F. Supp. 2d at 364; *Apotex v. Sanofi-Synthelabo, Inc.*, 386 F. Supp.

2d 549, 552 (S.D.N.Y. 2005) ("courts should be dubious of declaratory judgment actions when the plaintiff files suit to interfere with an action already filed").

This Court applied these factors in *Awosting,* 296 F. Supp. 2d at 474-75, where a party brought a declaratory judgment action which disputed "the same agreements over the same set of operative facts" as in a prior pending state court action between the parties. Holding that a declaratory judgment on matters pending in the state action created the risk that "a decision by this Court would produce a duplicative and potentially contradictory result with a decision rendered by the New York State Court," this Court abstained from jurisdiction. *Id.* at 474.

The Court should similarly decline jurisdiction over Count IX, for several reasons. First, the issues raised by Count IX are squarely before the state court; on its face, Count IX cites the State Court Action and seeks a declaration that the Jimenez defendants have not engaged in the conduct alleged in that action. Addressing such declaratory relief while the state court considers SBS's claims will waste judicial resources, and undermine or even contradict the adjudication ultimately reached in the State Court. *See id.*

Second, the State Court Action provides a complete opportunity and superior means to resolve the state law issues raised in that case. The two claims in the State Court Action arise solely under state law and can be efficiently addressed and resolved in state court, unlike the remaining claims in this proceeding.

Third, while Jimenez has asserted that the claims asserted in the State and Federal Actions are "identical" or "the same," the fact is that Count IX concerns entirely different issues of law and operative facts than the remainder of this case. Thus, the narrow breach of contract issue asserted by SBS in this action relates to the intellectual property provision of Luis Jimenez's Employment Agreement and arises from defendants' unlawful acts of cybersquatting

and trademark infringement in connection with SBS's El Vacilon trademarks and domain names. The State Court Action, on the other hand, arises from Luis Jimenez's unlawful solicitation of SBS employees – completely different operative facts.

Fourth, proceedings already are underway in the State Court Action. SBS has served defendants with discovery and defendants' motion to dismiss is *sub judice*.

Fifth, Jimenez's declaratory judgment claim plainly constitutes "procedural fencing." SBS chose the state court as the forum for its purely state law claim with respect to Jimenez's tortious interference and breach of the non-solicit provision of the Employment Agreement. After SBS later filed a predominantly federal case in federal court, relating to the completely different acts of cybersquatting and trademark infringement, Jimenez attempted to use the declaratory judgment counterclaim as a means to strip SBS of its chosen forum for its state law interference and non-solicit action. *See CGI Solutions, LLC v. Sailtime Licensing Group, LLC*, 2005 WL 3097533, at *6-8 (S.D.N.Y. Nov. 17, 2005); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff . . . militates in favor of dismissing the declaratory judgment action.").

Under these circumstances, as in *Wilton*, it would be "uneconomical as well as vexatious" for the declaratory judgment claim to proceed in this Court, when another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Accordingly, the Court should decline to exercise jurisdiction over the claim.

## V. COUNTS VII, VIII AND IX ARE NOT PART OF THE SAME CASE OR CONTROVERSY AS THE REMAINDER OF THE ACTION

Finally, the Court should dismiss Counts VII, VIII and IX for lack of subject matter jurisdiction under 28 U.S.C. § 1367(a), which provides for jurisdiction over state law claims only

when they are "so related to claims in the action within [the Court's] original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." In applying this standard, the fact that there "may be some facts that are common" to the complaint and a defendant's counterclaims is insufficient to confer jurisdiction. *Burgess v. Omar*, 345 F. Supp. 2d 369, 372 (S.D.N.Y. 2004) (dismissing counterclaim for lack of subject matter jurisdiction where some of the underlying facts were relevant to the original claim and the counterclaim, but claims did not "arise out of a common nucleus of operative fact"); *see also, e.g., Spencer v. Banco Real, S.A.*, 623 F. Supp. 1008, 1011 (S.D.N.Y. 1985) (dismissing trade secret counterclaims that were not "logically related" to plaintiff's employment discrimination action); *Bray v. City of New York*, 356 F. Supp. 2d 277 (S.D.N.Y. 2004) (dismissing a counterclaim where "[t]here [was] no logical connection between the claims, other than the fact that they both relate to Plaintiffs' status as [a participant in the disputed matter]"). The mere fact that two claims relate to the same transactions does not mean that they are part of the same case or controversy. *See, e.g., Perry v. Beneficial Fin. Co.*, 81 F.R.D. 490, 493 (W.D.N.Y. 1979) ("logical relationship between the claim and counterclaims" where "the claim and counterclaims arise out of the same general loan transactions but involve distinct legal and factual issues").

Here, Counts VII, VIII and IX do not arise out of the same operative facts and do not form part of the same case or controversy as any claims over which the Court has original jurisdiction. The Court's original jurisdiction in this action relates to SBS's federal claims for cybersquatting and trademark infringement arising from defendants' acts with respect to the El Vacilon domain names and the DVD entitled *EL VACILON: The Movie*, as well as Jimenez's *Lanham Act counterclaim relating to the alleged use of El Vacilón material.* None of these trademark-type federal claims arise out of the same operative facts as the declaratory judgment

counterclaim in Count IX, which seeks relief relating to SBS's state court allegations of breach

of the non-compete and non-interference provisions of the Employment Agreement. Nor do the

federal claims arise out of the same operative facts as the Count VII and VIII claims for breach

of contract and conversion relating to funds allegedly owed to Jimenez "for live readings, ratings

and advertising bonuses." Am. Counterclaims ¶¶ 62, 67. Indeed, the *only* relation between the

two is that the Employment Agreement also happens to set forth SBS's intellectual property

rights that are at issue in the federal action.[8]

## CONCLUSION

For all of the foregoing reasons, SBS's motion to dismiss the Jimenez defendants'

Counterclaims should be granted.

Dated: New York, New York
     April 17, 2007

Respectfully submitted,

KAYE SCHOLER LLP

By: _____

Paul C. Llewellyn (PL 8634)
Mark A. Beckman (MB 6750)
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Of counsel:*
Michelle T. Tepper
Margo G. Ferrandino

*Attorneys for Plaintiff*

---

[8]    As for SBS's breach of contract claim relating to misappropriation of its intellectual property, that claim, like SBS's other claims, does not arise out of the same operative facts as counterclaim Counts VII, VIII and IX. Moreover, because jurisdiction over SBS's contract claim is founded solely on supplemental rather than original jurisdiction, it cannot form the basis for supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (providing for jurisdiction over related state law claims only when they are "so related to claims in the action within [the Court's] *original jurisdiction*") (emphasis added).